**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Patience Dahl,<br><br>   Plaintiff,<br><br>v.<br><br>Tarahumara Express Incorporated,<br><br>   Defendant. | No. CV-20-02316-PHX-DJH<br><br>**ORDER** |

Pending before the Court is Plaintiff's Application for Entry of Default Judgment (Doc. 13). On April 20, 2021, the Court conducted a damages hearing, and Plaintiff subsequently filed supplemental exhibits in support of the Application (Doc. 18). For the following reasons, the Application for Entry of Default Judgment is granted.

**I.  Background**

Plaintiff filed this action on December 1, 2020. (Doc. 1). On January 27, 2021, after Defendant Tarahumara Express Incorporated ("Tarahumara") failed to appear or otherwise respond, the Clerk entered default. (Doc. 12).

Plaintiff's sole claim is for sex discrimination in violation of Title VII of the Civil Rights Act. (Doc. 1 at ¶¶ 22–27); *see* 42 U.S.C. § 2000e-2(a)(1). Plaintiff alleges that she began working as an assistant for Tarahumara, an Arizona corporation, on September 1, 2020. (Doc. 1 at ¶¶ 2, 10). On that day, Plaintiff's supervisor, Mark Miller, touched her inappropriately. (*Id.* at ¶¶ 11–12). Plaintiff testified that Mr. Miller ran the company and that he claimed to be a co-owner. On the third day of her employment, Mr. Miller made

"requests for what [Plaintiff] clearly understood to be a proposition for money in exchange for sex." (*Id.* at ¶ 17). Mr. Miller told plaintiff that "he needed to get rid of $50,000 and asked her if he could be her 'benefactor' in exchange for the money." (*Id.* at ¶ 14). Plaintiff asked Mr. Miller "if he was asking to be her sugar daddy, and he responded, 'No. No. Benefactor.'" (*Id.* at ¶ 16). Plaintiff declined these offers. (*Id.* at ¶ 17). Mr. Miller terminated her employment the following day. (*Id.* at ¶ 18).

Plaintiff filed an affidavit stating that she suffers from flashbacks of her time working for Tarahumara. (Doc. 13-1 at ¶ 9). "Every time my husband tried to touch me, my mind would flashback to Mr. Miller talking about being my benefactor and I would become physically ill." (*Id.* at ¶ 4). She also began to feel generally anxious around men, which, in conjunction with the flashbacks, exacerbates two heart conditions such that her previous medication is now ineffective. (*Id.* at ¶¶ 6–8). Because of this, Plaintiff "struggles to keep [her] heart function normal" at her current place of employment. (*Id.* at ¶¶ 7–8). During the damages hearing, Plaintiff also testified that she had been seeing a therapist once a week. For relief, the Complaint sought an award of compensatory and punitive damages, in addition to an award of backpay. (Doc. 1 at 4).

According to a Certification made pursuant to this Court's Order, (Doc. 14), Plaintiff's process server tried and failed to serve Tarahumara's statutory agent with the Complaint on three separate occasions in December 2020. (Doc. 15 at 1). Having failed to reach Tarahumara directly, Plaintiff instead served the Arizona Corporation Commission ("ACC"). (Doc. 9); *see* A.R.S. § 10-504(B) (allowing service on a corporation that fails to maintain a statutory agent by serving the ACC). On December 14, 2020, an ACC employee mailed a copy of the Complaint and Summons to Tarahumara at its registered address. (Doc. 15 at 2).

Prior to this lawsuit, Plaintiff's counsel had sent a demand letter to Tarahumara on September 25, 2020. (Doc. 15-2). On October 16, 2020, Tarahumara's counsel responded in writing and denied the allegations of sexual misconduct. (Doc. 15-4). In December 2020, Plaintiff asked the attorney who wrote Tarahumara's letter whether she could accept

service, but the attorney informed Plaintiff she had withdrawn from representing Tarahumara. (Doc. 15-5).

In Plaintiff's Application for Entry of Default Judgment, she seeks a judgment against Tarahumara in the amount of $53,674.53 and post-judgment interest. (Docs. 13 at 7; 18-1 at 3).[1]

## II. Legal Standard

Although courts strongly prefer to decide cases on their merits, they may use their discretion to enter default judgment. *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986); *see also* Fed. R. Civ. P. 55. If default judgment is sought against a party that failed to plead or otherwise defend, courts must determine they have subject matter jurisdiction over the matter and personal jurisdiction over the party. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

Once a court finds jurisdiction, it must consider: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel*, 782 F.2d at 1471–72. Upon default, a complaint's factual allegations are taken as true, except for those relating to damages. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

## III. Jurisdiction and *Eitel* Analysis

The Court will first address the question of jurisdiction. The Complaint brings a Title VII claim. (Doc. 1 at 3). It follows that the Court has federal question jurisdiction. *See* 28 U.S.C. § 1331. Tarahumara, an Arizona corporation, is certainly at home in this jurisdiction and, therefore, subject to this Court's personal jurisdiction. *See Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 317 (1945). The Court finds it has jurisdiction over the

---

[1] Although the Application for Entry of Default Judgment requests $53,666.50, (Doc. 13 at 7), Plaintiff amended her calculations in a supplemental brief such that the amount requested is $53,674.53. (Doc. 18-1 at 3).

subject matter of this case and its parties, and it will proceed to evaluate the *Eitel* factors.

### a. Possibility of Prejudice to Plaintiff

Without an entry of default judgment, Plaintiff would have filed her lawsuit in vain, and her injuries would remain without relief. There is a great possibility of prejudice to Plaintiff. This factor favors entering default judgment.

### b. Merits of Substantive Claim & Sufficiency of Complaint

"Under an *Eitel* analysis, the merits of plaintiff's substantive claims and the sufficiency of the complaint are often analyzed together." *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010). Plaintiff's sole claim is for sex discrimination in violation of Title VII. (Doc. 1 at 3). A violation of Title VII occurs when a workplace is "permeated" with abusive behavior that alters the victim's employment conditions and creates an abusive environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). For this claim, Plaintiff "must show that she perceived her work environment to be hostile, and that a reasonable person in her position would perceive it to be so." *Dominguez-Curry v. Nev. Transp. Dept.*, 424 F.3d 1027, 1034 (9th Cir. 2005). Plaintiff must also show the harassment occurred because of sex. *Id.*

Here, Plaintiff alleges that her supervisor "inappropriately put his hands on her legs and shoulders" and would "feign accident and touch Ms. Dahl's breasts." (Doc. 1 at ¶ 12). Then he approached her saying he needed to get rid of $50,000 and asked to be Plaintiff's "benefactor." (*Id.* at ¶ 14). When Plaintiff asked "if he was asking to be her sugar daddy, he responded, 'No. No. Benefactor.'" (*Id.* at ¶ 16). She declined what she "understood to be a proposition for money in exchange for sex." (*Id.* at ¶ 17). Her supervisor fired her the next day. (*Id.* at ¶ 18). Plaintiff's Complaint shows she perceived a hostile work environment, and it shows a reasonable person would agree. The allegations also allow the Court to reasonably draw the inference that the harassment occurred because of Plaintiff's sex. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that claims are plausible when the complaint pleads facts such that a court may draw a reasonable inference that a defendant is liable for the misconduct alleged). Therefore, the Complaint

states a claim for sex discrimination under Title VII. Both these *Eitel* factors favor entering default judgment.

### c. Sum at Stake

In this factor, the Court considers the amount of money at stake in relation to the seriousness of a defendant's conduct. *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). "If the sum of money at stake is completely disproportionate or inappropriate, default judgment is disfavored." *Gemmel v. Systemhouse, Inc.*, 2008 WL 65604, at *4 (D. Ariz. Jan. 3, 2008).

Plaintiff seeks an award of $53,674.53 as a result of sexual harassment she suffered after working for three days as a Tarahumara employee. According to Plaintiff, and as further examined below, this amount is partly limited by Title VII's statutory damage cap of $50,000 for small companies. (Docs. 13 at 4–5; 13-1 at 3–4; 18-1 at 3); *see* 42 U.S.C. § 1981a(b) (limiting the amount a plaintiff can recover in compensatory and punitive damages, but not applying to backpay). The Court finds this amount is proportionate to the harm alleged in the Complaint. This finding is further supported by the statutory limitation on damages, which marks what Congress believed to be the outer bounds of reasonableness for Title VII claims. This factor supports entry of default judgment.

### d. Possibility of Dispute

While Tarahumara could have disputed the Complaint's allegations, that time has passed. At this stage, Plaintiff's allegations are taken as true. *See Geddes*, 559 F.2d at 560. Therefore, the possibility of dispute is low. This factor favors entering default judgment.

### e. Excusable Neglect

It is very unlikely that Tarahumara entered default due to excusable neglect. Plaintiff sent a demand letter to Tarahumara, who could then reasonably expect a lawsuit would follow. Plaintiff attempted to serve Tarahumara's statutory agent multiple times. When those attempts failed, Plaintiff served the ACC, which constitutes proper service under Arizona law. *See* A.R.S. § 10-504(B). There is no indication that Tarahumaras' failure to defend this case is due to excusable neglect. Therefore, this factor also favors

entering default judgment.

### f. Policy Favoring Decisions on the Merits

The Court is unable to reach the merits of this case because the Tarahumara has failed to plead or otherwise defend this action. Therefore, this factor weighs against granting default judgment.

Overall, the Court finds the *Eitel* factors support entry of default judgment.

## IV. Damages Analysis

Having found default judgment proper, the only remaining issue is one of damages. As noted above, Plaintiff seeks compensatory damages, punitive damages, and backpay totaling $53,674.53, as well as post-judgment interest. "The district court has wide discretion in awarding remedies to make a Title VII plaintiff whole." *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1495 (9th Cir. 1995) (citation omitted). It is Plaintiff's responsibility to support a request for damages with evidence, testimony, or written affidavits. *See Grabda v. IMS Acquisition LLC*, 2020 WL 5544366, at *3 (D. Ariz. Sept. 16, 2020).

Damages may not differ in kind or exceed what was demanded in the pleadings. Fed. R. Civ. P. 54(c). This is so a defendant may know from the complaint what the potential award may be, and the defendant may then decide whether a response is worthwhile. *See Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007). The damages Plaintiff seeks were requested in the Complaint, and so the Court finds they do not differ in kind from what was initially demanded. (Doc. 1 at 4).

The Court will first address the claims for compensatory and punitive damages, which are permitted under Title VII. *See* 48 U.S.C. 1981a(b). Plaintiff seeks an award of $35,000 in compensatory damages and $15,000 in punitive damages. (Doc. 17-2). A plaintiff may recover punitive damages when a defendant's actions were performed "with malice or with reckless indifference to the [plaintiff's] federally protected rights . . . ." 48 U.S.C. 1981a(b)(1). Title VII limits the total amount of damages a plaintiff may recover to an amount proportional to the size of the defendant company. *Id.* at § 1981a(b)(3).

Plaintiff's affidavit and testimony indicate that Tarahumara had approximately twenty to fifty employees. (Doc. 13-1 at ¶ 12). Therefore, the maximum amount of compensatory and punitive damages Plaintiff may seek is $50,000. 48 U.S.C. § 1981a(b)(3)(A).

Upon review of the record, the Court finds that Plaintiff has demonstrated "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life" such that the Court will grant her request for compensatory damages. 42 U.S.C. § 1981a. The Court also finds that the supervisor's actions combined with Plaintiff's subsequent termination demonstrate reckless indifference meriting punitive damages. In sum, the Court will award $50,000 in compensatory and punitive damages.

Next the Court turns to backpay. Title VII's damages limitation does not apply to awards of backpay. *See id.* § 1981a(b)(2). Victims of discrimination may receive backpay in order to make them whole, although they still maintain a duty to mitigate damages by seeking alternative employment with reasonable diligence. *Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1020 (9th Cir. 2000), *as amended on denial of reh'g* (Nov. 2, 2000); *Farsakian v. Kent*, 2020 WL 6363729, at *5 (D. Ariz. Oct. 29, 2020). Courts take equitable considerations into account to determine what backpay remedy would make a plaintiff whole. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 420 (1975).

After she was fired, Plaintiff states that she was unemployed for seven weeks, except for a two-day position with the U.S. Census Bureau where she earned $245.47. (Doc. 18-1 at 3). At the end of the seven weeks, she started a new job. (Doc. 13-1 at ¶ 14). Plaintiff states that she would have been making $560 per week as Tarahumara's employee, and she calculates that for seven weeks of unemployment, minus the amount earned working for the Census Bureau, she is entitled to $3,674.53. (Doc. 18-1 at 3). The two days Plaintiff spent with the Census Bureau were spent in training to be an enumerator, but Plaintiff did not continue working there because "they did not have any more work for me after my training." (Doc. 18-1 at 3). Recognizing that the purpose of this backpay award is to make Plaintiff whole, the Court finds Plaintiff mitigated her damages with reasonable diligence and so grants a backpay award in the amount of $3,674.53. *See Caudle*, 224 F.3d at 1020.

Finally, the Court will award post-judgment interest at the applicable federal rate pursuant to 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court.").

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Application for Entry of Default Judgment (Doc. 13) is **granted**. Default judgment shall be entered by the Clerk of Court in favor of Plaintiff and against Defendant in the amount of $53,674.53.

**IT IS FURTHER ORDERED** that Plaintiff is awarded post-judgment interest at the applicable federal rate pursuant to 28 U.S.C. § 1961(a).

**IT IS FINALLY ORDERED** that Plaintiff's counsel may file a motion for fees and costs pursuant to Local Rule of Civil Procedure 54.2.

Dated this 7th day of May, 2021.

_____
Honorable Diane J. Humetewa
United States District Judge